**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| CVS HEALTH CORPORATION AND CVS PHARMACY, INC.,<br><br>    Movants,<br>v.<br><br>THRIFTY DRUG STORES, INC.,<br><br>    Respondent. | No. |

**MEMORANDUM OF LAW IN SUPPORT OF
CVS'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS
<u>RESPONSIVE TO RULE 45 SUBPOENA</u>**

# TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... 1

**FACTUAL BACKGROUND** ........................................................................................ 2

      A.      The Rhode Island Litigation ............................................................................ 2

      B.      CVS's Subpoena to Thrifty White ................................................................... 4

**ARGUMENT** ................................................................................................................... 6

**CONCLUSION** ............................................................................................................. 10

# TABLE OF AUTHORTIES

## CASES

*Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578 (D. Minn. 1999) ................................................................................................................................. 6, 7

*Blue Cross & Blue Shield of Ala., et al. v. CVS Health Corp., et al.*, No. 20-cv-00236-WES-PAS (D.R.I.) ............................................................................................................... 2

*Capital BlueCross v. CVS Health Corp., et al.*, No. 1:20-cv-520-WES-PAS ............................... 2

*CareFirst of Maryland, Inc., et al. v. CVS Health Corp., et al.*, No. 1:21-cv-223-WES-PAS ................................................................................................................................................. 2

*Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*, 217 F.3d 33 (1st Cir. 2000) ........... 9

*Highmark Inc., et al. v. CVS Pharmacy, Inc.*, No. 1:20-cv-507-WES-PAS ........................... 2, 11

*Hofer v. Mack Trucks, Inc.*, 981 F.2d 377 (8th Cir. 1992) ........................................................... 6

*Horizon Healthcare Services, Inc. v. CVS Health Corp., et al.*, No. 1:20-cv-458-WES-PAS ................................................................................................................................................. 2

*Humana Health Plan, Inc., et al. v. CVS Pharmacy, Inc., et al.*, No. 01-19-0000-6924 (Am. Arb. Ass'n May 25, 2022) ..................................................................................................... 3

*In re BCBS v. Rite Aid Litig.*, No. 20-cv-1731-ECT-HB (D. Minn. Aug. 7, 2020) ........................ 3

*Keefe v. City of Minneapolis*, No. 09-cv-2941, 2012 WL 7766299 (D. Minn. May 25, 2012) .................................................................................................................................................. 7

*Orduno v. Pietrzak*, No. 14-cv-1393, 2016 WL 5853723 (D. Minn. Oct. 5, 2016) ........................ 6

*Prime Therapeutics LLC v. CVS Pharmacy, Inc., et al.*, No. 22-mc-35 (D. Minn. Dec. 5, 2022) .................................................................................................................................................. 7

*United Mercury Mines Co. v. Bradley Min. Co.*, 259 F.2d 845 (9th Cir. 1958) ............................ 9

*United States ex rel. Winkelman v. CVS Caremark Corp.*, 118 F. Supp. 3d 412 (D. Mass. 2015) ....................................................................................................................................... 3

*Washington v. CVS Health*, No. 15-cv-3504-YGR (N.D. Cal. June 23, 2021) ............................. 3

## RULES

Fed. R. Civ. P. 26(b)(1) ................................................................................................................. 6

Fed. R. Civ. P. 45 .......................................................................................................................... 1

## INTRODUCTION

Thrifty Drug Stores, Inc. ("Thrifty White") is attempting to evade its obligation to produce documents responsive to CVS's Rule 45 subpoena, hiding behind a half-hearted objection of irrelevance despite the requested documents' obvious relevance to the underlying litigation. Notably, Thrifty White has already identified documents responsive to CVS's subpoena, and it is not asserting any burden objection. This entire dispute, therefore, turns upon the relevance of the requested documents.

Thrifty White's relevance objection is wrong for at least three reasons. First, the documents can be used to impeach a former pharmacy manager for Thrifty White who is now the sole witness for Blue Cross and Blue Shield of North Dakota ("BCBS-ND"), a Plaintiff in CVS's underlying litigation. Second, CVS will also use the documents to show that that witness knew or should have known of information (e.g., certain pricing practices) relevant to defenses such as the statute of limitations in the underlying litigation. Third, because the subpoenaed documents concern a prescription drug membership program similar to the one at issue in CVS's litigation, the documents are important evidence of industry custom which contradict Plaintiffs' assertion of fraudulent scienter and can be used by CVS's expert witness in formulating an opinion.

In civil discovery, the bar for establishing relevance in order to obtain discovery is not high. The modest volume of documents that CVS is seeking is plainly relevant to CVS's underlying case, and the Court should order Thrifty White to produce the requested documents within 21 days of the Court's order.

1

# FACTUAL BACKGROUND

### A.    CVS's Underlying Litigation

In 2020 and 2021, various groups of Blue Cross and Blue Shield health plans filed five lawsuits against CVS.  Those cases, now consolidated for discovery before the same judge in the United States District Court for the District of Rhode Island, raise identical allegations on behalf of 22 Plaintiffs.  *See, e.g.*, *Blue Cross & Blue Shield of Ala., et al. v. CVS Health Corp., et al.*, No. 20-cv-00236-WES-PAS (D.R.I.) (lead case).[1]  Specifically, Plaintiffs allege that, since 2008, CVS has overcharged them for prescription drugs whenever members of their health plans filled prescriptions for certain drugs also covered by CVS's prescription drug membership program.  Plaintiffs seek millions of dollars in damages.  *See id.*, ECF No. 1, at 1, 5 (complaint).

To understand Thrifty White's relevance to these cases, one must understand how health plans pay for prescription drugs.  Generally speaking, one input in considering how much a health plan will pay for a drug is the pharmacy's "usual and customary," or "U&C," price.  Consistent with industry practice and its relevant contracts, CVS has always submitted its retail cash price as its U&C price.

Plaintiffs in the underlying cases contend that CVS should have, but did not, treat as "usual & customary" their lower prices available to members of CVS's membership

---

[1] The four other cases are *Horizon Healthcare Services, Inc. v. CVS Health Corp., et al.*, No. 1:20-cv-458-WES-PAS; *Highmark Inc., et al. v. CVS Pharmacy, Inc.*, No. 1:20-cv-507-WES-PAS; *Capital BlueCross v. CVS Health Corp., et al.*, No. 1:20-cv-520-WES-PAS; and *CareFirst of Maryland, Inc., et al. v. CVS Health Corp., et al.*, No. 1:21-cv-223-WES-PAS.

2

program, called Health Savings Pass or "HSP." The HSP program gave individuals access to lower pricing on generic drugs only if they enrolled in the program, paid an annual membership fee, and agreed to certain terms and conditions. HSP was widely publicized. Yet over a decade after HSP debuted in 2008, Plaintiffs decided to sue. They contend that HSP prices were U&C prices, and that they overpaid because CVS did not submit its HSP prices as U&C prices. *See* lead case, ECF No. 1, at 1-2. Their lawsuits followed several others that made similar allegations against other pharmacies with membership programs. *See, e.g.*, *In re BCBS v. Rite Aid Litig.*, No. 20-cv-1731-ECT-HB, ECF No. 2 (D. Minn. Aug. 7, 2020).

In all three HSP-related cases to reach the merits to date, CVS has prevailed.[2] One reason for this success has been CVS's ability to demonstrate, through evidence from others in the pharmaceutical industry, that CVS's practices followed the industry understanding of U&C pricing. Thrifty White is in a similar position and its understanding will bear on the industry meaning of "usual & customary" as applied to membership programs. Like many pharmacies, Thrifty White operated a prescription drug membership program similar to CVS's HSP program. CVS understands that, in keeping with the industry standard, Thrifty White did ***not*** submit its membership program

---

[2] *See United States ex rel. Winkelman v. CVS Caremark Corp.*, 118 F. Supp. 3d 412 (D. Mass. 2015) (prevailing on a motion to dismiss), *aff'd*, 827 F.3d 201 (1st Cir. 2016); *Washington v. CVS Health*, No. 15-cv-3504-YGR, ECF No. 609 (N.D. Cal. June 23, 2021) (prevailing at a jury trial); *Humana Health Plan, Inc., et al. v. CVS Pharmacy, Inc., et al.*, No. 01-19-0000-6924 (Am. Arb. Ass'n May 25, 2022) (attached as Ex. D) (prevailing at arbitration).

3

price as its U&C price. To prove this proposition in litigation, CVS requires the subpoenaed documents.

Importantly, Thrifty White is not just *any* pharmacy with a membership program. Krystal Wheeler Dennis – the sole witness being presented by BCBS-ND, a Plaintiff in CVS's litigation – previously worked as the pharmacy manager at Thrifty White and had experience with Thrifty White's membership program. During her deposition on May 31, 2023, she recalled Thrifty White's membership program but (conveniently) could not recall whether or not Thrifty White submitted its membership program price as U&C. *See* Depo. of Krystal Wheeler Dennis, *Blue Cross & Blue Shield of Alabama v. CVS Pharmacy, Inc.*, Civil Action No. 1:20-cv-00236-WES-PAS (May 31, 2023) (attached as Ex. B), 32:22-35:22. Accordingly, the subpoenaed documents would do more than just support CVS's evidence of the pharmacy industry's custom and practice on U&C-reporting practices on which an expert witness can rely. They would also show whether the sole witness of one Plaintiff in the litigation was aware that pharmacies generally—specifically her former employer—did not submit membership program prices as U&C. This practice of Thrifty White, therefore, is an important fact for purposes of CVS's defenses including the statute of limitations, damages, and more.

### B. CVS's Subpoena to Thrifty White

On June 9, 2023, CVS served Thrifty White with a subpoena containing eight document requests. *See* Ex. A. In two separate meet and confer discussions, CVS agreed to focus its subpoena on only five of the requests (requests 1-5). Declaration of Grant Geyerman, ¶ 5 (July 26, 2023). Those requests are as follows:

4

- Request No. 1. All documents reflecting the requirements for membership in Thrifty White's Fee-Based Membership Program;

- Request No. 2. All documents concerning or reflecting the fact that You did not submit Thrifty White's Fee-Based Membership Program price as a Thrifty White Pharmacy's usual and customary price on third-party adjudicated claims;

- Request No. 3. All documents concerning or reflecting Your rationale for not submitting Thrifty White's Fee-Based Membership Program price as Thrifty White Pharmacy's usual and customary price on third-party adjudicated claims;

- Request No. 4. Your contract(s) to participate in Prime Therapeutics LLC's retail pharmacy network in effect during the period You offered Thrifty White's Fee-Based Membership Program; and

- Request No. 5. To the extent not reflected in the documents responsive to Request No. 4, documents sufficient to show the definition of usual and customary applicable to claims you submitted to Prime Therapeutics LLC during the period You offered the Thrifty White's Fee-Based Membership Program

Ex. A. CVS is not seeking to compel enforcement of requests 6-8.[3]

Despite acknowledging that responsive documents exist concerning requests 1-5, including some that have been shared with its counsel already, Thrifty White refuses to produce any documents. Geyerman Decl. ¶ 6-7. Thrifty White has never argued that the production of documents would be unduly burdensome. Instead Thrifty White claims that the documents are "not relevant" to CVS's underlying litigation. Geyerman Decl. ¶ 7. During the meet-and-confer process, CVS's counsel explained the relevance of the

---

[3] Thrifty White has represented it cannot locate any documents responsive to requests 7 and 8. And, CVS is withdrawing requests 6, in light of Thrifty White's and Ms. Wheeler Dennis' objection based on personal privacy.

5

requested documents, which Thrifty White's counsel stated he understood. Indeed, CVS's counsel finally asked Thrifty White's counsel directly if the *real motivation* for refusing to produce documents was not the irrelevance of the documents, but a fear that Thrifty White, like CVS, would become a target in the same (baseless) litigation that CVS and other pharmacies with membership programs are facing, were it to produce the requested documents demonstrating Thrifty White followed the same U&C pricing practices. Thrifty White's counsel responded with words to the effect that such an inference would not be wrong. Geyerman Decl. ¶ 8.

There is a protective order in the underlying litigation, which allows Thrifty White to designate any competitively sensitive business information with up to one of three levels of confidentiality. *See* lead case, ECF No. 73 (Revised Stipulated Protective Order) (attached as Ex. C).

## ARGUMENT

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." Fed. R. Civ. P. 26(b)(1). The party seeking discovery is required only to make a threshold showing of relevance. *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). This threshold showing "is met if the information sought is 'relevant to the subject matter involved in the pending action.'" *Orduno v. Pietrzak*, No. 14-cv-1393 (ADM/JSM), 2016 WL 5853723, *3 (D. Minn. Oct. 5, 2016) (quoting *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 579 (D. Minn. 1999)). Once the threshold for relevance is met, "[p]ursuant to a subpoena, a non-party can be

compelled to produce evidence regarding any matter relevant to the claim or defense of any party, unless a privilege applies." *Keefe v. City of Minneapolis*, No. 09-cv-2941 (DSD/SER), 2012 WL 7766299, at *3 (D. Minn. May 25, 2012). The standard for establishing relevance is "necessarily broad in scope, in order to allow the parties essentially equal access to the operative facts." *Archer Daniels*, 187 F.R.D. at 589 (citations omitted).

CVS easily meets the threshold showing of relevance. **Request No. 1** seeks documents demonstrating the requirements of Thrifty White's membership program during its years of operation so that CVS can show that the program was similar in nature to HSP at all times (e.g., required customer enrollment, payment of annual fee, etc.). **Requests Nos. 2 and 3** focus on whether or not Thrifty White was submitting its membership program price as U&C and its rationale for that decision (e.g., a membership program price is not the U&C price because it is not the pharmacy's price available to all customers, only to program-enrollees). Finally, **Request Nos. 4 and 5** request documents showing Thrifty White's contractual definition of U&C with Prime Therapeutics LLC, the specific pharmacy benefit manager ("PBM") adjudicating BCBS-ND's claims during the relevant period in the underlying case.[4] Such documents are relevant because CVS

---

[4] In 2022, CVS prevailed in this District on motions practice to compel Prime Therapeutics to produce documents that CVS had subpoenaed in connection with the same underlying litigation. *Prime Therapeutics LLC v. CVS Pharmacy, Inc., et al.*, Civil Action No. 22-mc-35 (WMW-JFD) (D. Minn. Dec. 5, 2022), ECF No. 37. That motions practice took place before CVS understood that BCBS-ND's witness was the pharmacy manager at Thrifty White.

can use them to show that Thrifty White's contractual definition of U&C included in its contract with Prime was similar to the definition of U&C in CVS's contract with Prime, and both pharmacies interpreted those contractual obligations not to require the submission of membership program prices as U&C.  *See* Ex. A.  Such evidence that another pharmacy interpreted U&C not to include membership program pricing, just as CVS did, tends to undermine BCBS-ND's argument in the underlying case that CVS has committed common law fraud by deliberating submitting an inaccurate U&C price to BCBS-ND.[5]

All of this is directly relevant to the testimony of Plaintiff BCBS-ND's sole witness in the underlying case, Krystal Wheeler Dennis, the Director of Pharmacy Operations.  Ms. Dennis previously worked at as the pharmacy manager at Thrifty White from 2007 to 2012.  Ex. B, 31:18-21.  Ms. Dennis testified that she remembered that Thrifty White offered a membership program while she worked there, but she could not remember the specifics of the program and, most importantly, could not remember whether Thrifty White had submitted the membership program price as the U&C price. Ex. B, 32:22-35:22.  During the deposition, Ms. Dennis admitted that it would be "important" to know whether or not Thrifty White submitted its membership program price as the U&C price. Ex. B, 38:8-13.

---

[5] In the underlying litigation, BCBS-ND is alleging common law fraud and other fraud-based claims against CVS.

Ms. Dennis is correct in this respect: whether or not Thrifty White submitted its membership program price as U&C is "important" to CVS's defense against claims brought by BCBS-ND. A jury will tend to disbelieve BCBS-ND's claims if its current Pharmacy Director previously engaged in the same conduct which it now alleges to be fraudulent—not submitting a membership program price as U&C. Establishing that Plaintiffs' upper-level employees knew that membership program prices were not submitted as U&C will also assist CVS with its defenses relating to the statute of limitations, damages, and more insofar as it shows the potential for knowledge which can be imputed to the Plaintiff. The only way for CVS to obtain the necessary evidence is through its subpoena to Thrifty White.

Documents showing Thrifty White's U&C practices are important for CVS's defense against more Plaintiffs than just BCBS-ND. Evidence that Thrifty White did not submit its membership program price as U&C supports CVS's defense that its interpretation of U&C as excluding membership program prices was correct because CVS was following the industry standard. *Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd*., 217 F.3d 33, 38-39 (1st Cir. 2000) (considering industry standard in interpreting an ambiguous term); *see also United Mercury Mines Co. v. Bradley Min. Co*., 259 F.2d 845, 848 (9th Cir. 1958) ("The interpretation of words of art by reference to the practices of the particular industry is a common sense operation and one long familiar in the judicial process."). The industry's understanding further supports CVS's defense that it acted on a good faith, reasonable belief that HSP prices were not U&C prices—negating Plaintiffs' claims of fraud.

CVS already has evidence from other pharmacies that operated membership programs (e.g., Walgreens, Rite Aid, Kmart, H-E-B) and did not submit those program prices as U&C which it has used to prevail in past litigation. Unlike the other listed pharmacies, Thrifty White is a regional pharmacy chain. Such evidence from Thrifty White will further support CVS's argument that no pharmacy with a membership program, regardless of its size or geographic scope, submitted those membership program prices as U&C. And, it would be evidence from a pharmacy with a more direct connection to BCBS-ND than any of the national chains. In short, evidence that pharmacies universally did not consider membership program prices to be U&C supports CVS's defenses against fraudulent scienter.

Because CVS has more than met the standard for relevance, the Court should order Thrifty White to comply with the properly served subpoena.

## CONCLUSION

For the foregoing reasons, CVS respectfully requests that the Court enter an order granting CVS's motion to compel and ordering Thrifty White to produce documents responsive to the subpoena within 21 days of the Court's order.

Dated: July 26, 2023　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　/s/ Samuel M. Johnson

　　　　　　　　　　　　　　　　　　Samuel M. Johnson (#395451)
　　　　　　　　　　　　　　　　　　SKOLNICK & BARDWELL, P.A.
　　　　　　　　　　　　　　　　　　1150 SPS Tower
　　　　　　　　　　　　　　　　　　333 South 7th Street

10

Minneapolis, MN 55402
Telephone: (612) 677-7600
Fax: (612) 677-7601

Grant A. Geyerman
(*pro hac vice* motion pending)
Jamie Wolfe (*pro hac vice* motion pending)
WILLIAMS & CONNOLLY LLP
680 Maine Ave, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000
Fax: (202) 434-5029

*Attorneys for CVS Health Corp. and CVS Pharmacy, Inc.*